IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TRESIA W.[1], | ) |
| | ) |
|        **Plaintiff,** | ) |
| | ) |
| v. | )   Civil Action No. 7:18-cv-00613 |
| | ) |
| ANDREW SAUL, | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
|        **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Tresia W. ("Tresia") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act").[2] 42 U.S.C. §§ 401–433, 1381–1381f. Tresia alleges that the Administrative Law Judge ("ALJ") erred by: (1) improperly weighing the medical opinion of her treating physician; and (2) failing to perform a proper function-by-function analysis. Tresia further alleges that the Appeals Council erred by failing to consider additional evidence.

I conclude that substantial evidence does not support the Commissioner's decision to discount the opinion of Tresia's treating physician. Accordingly, I **GRANT in part** Tresia's Motion for Summary Judgment (Dkt. No. 16) and **DENY** the Commissioner's Motion for

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

[2] This case is before me by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

Summary Judgment (Dkt. No. 9), and **REVERSE AND REMAND** this case for further administrative proceedings consistent with this opinion.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Tresia failed to demonstrate that she was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d. 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted).

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

# **CLAIM HISTORY**

Tresia filed for DIB and SSI in October 2015, claiming that her disability began on April 5, 2010, due to problems with her back and left wrist. R. 213, 244. Tresia's date last insured was December 31, 2015; thus, she must show that her disability began on or before this date and existed for twelve continuous months to receive DIB.[4] R. 240; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). To be entitled to SSI, Tresia must show that she was disabled between the date she filed her application for SSI benefits in October 2015, and the date of the ALJ's decision. See 20 C.F.R. §§ 416.330, 416.335.[5] The state agency denied Tresia's applications at the initial and reconsideration levels of administrative review. R. 73–86, 87–100, 103–115, 116–28. On October 27, 2017, ALJ Kevin Boucher held a hearing to consider Tresia's claims for DIB and SSI. R. 46–72. Counsel represented Tresia at the hearing, which included testimony from vocational expert ("VE") Ricky D. Bradley. On February 26, 2018, the ALJ entered his decision analyzing Tresia's claims under the familiar five-step process[6] and denying her claim for benefits. R. 33–41.

---

[4] Tresia was a person closely approaching advanced age on the date of the ALJ's opinion in February 2018. R. 40.

[5] Since a claimant cannot receive SSI benefits until the month following the month in which she applied for disability (October 2015), a determination of whether she is disabled is only relevant as of November 2015. See 20 C.F.R. § 416.335).

[6] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

The ALJ found that Tresia was insured at the time of the alleged disability onset and that she suffered from the severe impairments of spine disorder, dysfunction of major joints, chronic obstructive pulmonary disease ("COPD"), and obesity.[7] R. 35. The ALJ determined that these impairments, either individually or in combination did not meet or medically equal a listed impairment. R. 36–37. The ALJ specifically considered listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), and 3.02 (chronic respiratory disorders). Id. The ALJ also considered Tresia's obesity. R. 37.

The ALJ concluded that Tresia retained the residual functional capacity ("RFC") to perform a limited range of light work. R. 37. Specifically, Tresia can only frequently climb ramps or stairs, can only occasionally push or pull with her left upper extremity, climb ladders, ropes, or scaffolds, balance, stoop, kneel, crouch or crawl, and must avoid concentrated exposure to vibration, fumes, odors, dust, gases, poor ventilation, and hazards like machinery, and unprotected heights. Id. The ALJ determined that Tresia is not capable of performing any of her past relevant work, but found that there are jobs that exist in sufficient numbers in the national economy that Tresia can perform, including a tanning salon attendant, garment folder, and address clerk. R. 41. Thus, the ALJ determined that Tresia is not disabled. R. 41. Tresia appealed the ALJ's decision and the Appeals Council denied her request for review on October 17, 2018. R. 14–17.

## ANALYSIS

Tresia alleges that the ALJ erred by: (1) improperly weighing the medical opinion of her treating physician, Knotresha Stewart, M.D.; and (2) failing to perform a proper function-by-

---

[7] The ALJ determined that Tresia's affective disorder is nonsevere. R. 36.

function analysis. Tresia further alleges that the Appeals Council erred by failing to consider additional evidence.

### A. Medical History

Tresia has a history of complaints of back and neck pain and, after a fall, was diagnosed with a mild acute LI compression fracture in February 2012.[8] R. 317. In addition to the fracture, the February 2012 MRI showed degenerative disc disease at L5-S1. R. 338. However, despite showing symptoms of decreased range of motion, on examination, Tresia reportedly had normal gait and normal strength in March and April 2012. R. 316. Tresia fractured her left wrist in April 2012, requiring surgery. R. 314, 324, 331.

Tresia presented to the emergency department complaining of back and/or neck pain on a handful of occasions in 2015 through 2017. R. 356–59, 399, 437,  A lumbar spine x-ray in April 2016 showed mild scoliosis and an old compression deformity of T12, and a lumbar spine x-ray in April 2017 showed no acute findings. R. 401, 439. In 2016 and 2017, Tresia saw Dr. Stewart, her treating family physician, every two to three months for follow-up visits related to a variety of ongoing complaints, including her thyroid, pain, and fatigue. R. 407, 454, 462, 470–71, 479–80, 484, 491, 503, 507, 524, 528, 532, 539, 545, 557, 579, 602. For example, in April and October 2016, Tresia complained of pain and numbness in her leg and Dr. Stewart recorded an abnormal sensory examination with a "decrease on [right] leg." R. 484–86, 525. In June, July, and August 2016, Tresia complained of severe abdominal pain and nausea; on exam her abdomen was tender and abnormal, and Dr. Stewart diagnosed cholelithiasis. R. 463, 466–67, 532, 538. In January and October 2017, Tresia continued to complain of back and leg pain, and was diagnosed with worsening sciatica and muscle spasm, and Dr. Stewart noted a "back

---

[8] Tresia's medical records show she had back surgery in 2007 after a car accident. R. 54, 316, 377.

abnormality on palpation." R. 546–48, 604. Likewise, Tresia's complaints to Dr. Stewart of stomach pain and nausea continued through 2017. R. 557, 602.[9]

1. Medical Opinion Evidence

In December 2015, William Humphries, M.D. completed a consultative examination. R. 377–81. On examination, Dr. Humphries noted tenderness in Tresia's back, neck, and wrist, a mild antalgic gait due to lumbar discomfort, and limited range of motion in the spine, shoulder, elbow, hip, left wrist, and knee, but normal strength. R. 378–81. Dr. Humphries concluded that Tresia was capable of sitting, standing, and/or walking for six hours in an eight-hour day, with additional postural limitations, and no left hand controls. R. 379. The ALJ gave this opinion partial weight. R. 39.

State agency physicians R.S. Kadian, M.D. and Bert Spetzler, M.D. reviewed the record in 2016 and both concluded that Tresia was capable of a limited range of light work. They indicated certain exertional and postural limitations because of Tresia's back and left wrist pain, as well as her obesity and COPD. R. 83–84, 125–26. The ALJ gave these opinions great weight. State agency psychologists Andrew Bockner, M.D. and Joseph Leizer, M.D. both found Tresia's affective disorders to be non-severe impairments, and noted she had, had no mental health treatment. R. 80–81, 109. The ALJ gave the opinion of Dr. Bockner great weight, and gave partial weight to the opinion of Dr. Leizer because the ALJ found the record supports mild mental limitations. R. 39.

In October 2017, Dr. Stewart completed a medical source statement indicating that Tresia could stand/walk less than two hours and sit about two hours in an eight-hour day, could only occasionally lift 10 pounds, and would be absent more than four times per month. R. 609–10. Dr.

---

[9] In addition to her history of back, stomach, and wrist pain, Tresia carried a diagnosis of COPD, but reported smoking cigarettes daily. R. 602.

6

Stewart indicated that her opinion expressed in the medical source statement cannot apply to any date prior to when she first saw Tresia in April 2016, which is after Tresia's date last insured for DIB purposes. As such, Dr. Stewart's opinion may not affect the ALJ's decision regarding DIB, which requires a showing of disability prior to December 2015. Tresia also applied for SSI benefits, however, and therefore, Dr. Stewart's opinion could potentially affect that claim.

2. Medical Evidence Submitted to Appeals Council

Tresia submitted evidence to the Appeals Council consisting of records from Amanda Page, PA-C and Jack Sproul, M.D., x-rays, and a medical source statement from Dr. Stewart. R. 1–13. The Appeals Council found that the evidence was either not new, did not show a reasonable probability that it would change the outcome of the decision, or did not relate to the period at issue. R. 15.

**B. Medical Opinions of Treating Physician**

Tresia argues that the ALJ's rejection of Dr. Stewart's opinion, as set forth in an October 2017 questionnaire about her functional limitations, is not supported by substantial evidence. She emphasizes that the ALJ's opinion fails to discuss Dr. Stewart's conclusions that, in an eight-hour workday, Tresia could stand/walk less than two hours, sit for two hours, and would miss more than four days of work due to her impairments, and fails to set forth adequate reasons or an explanation for discounting these conclusions.

Regarding Dr. Stewart's October 2017 questionnaire, in which she gave her opinion as to Tresia's functional capacity, the ALJ wrote:

> [I] accord[] little weight to the findings of Dr. Stewart. (Exhibits 8F;9F; 10F; 11F). These restrictions are far more restrictive than warranted and are an outlier when compared to the rest of the medical opinions. In sum, [Tresia's] impairments support the above residual functional capacity assessment by limiting her ability to perform exertional, postural, and environmental activities.

7

R. 39. The ALJ thus discounts Dr. Stewarts findings, which include more than 200 pages of records from multiple appointments, with almost no explanation beyond characterizing her opinions as an "outlier" compared to the "rest of the medical opinions." Id. This is the only place the ALJ specifically discusses Dr. Stewart's opinions, though he does make passing reference to the records from a few of Tresia's medical appointments with Dr. Stewart. R. 38.

The social security regulations require that an ALJ give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record."[10] 20 C.F.R. § 404.1527(c)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001); Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017) (noting that "the ALJ is supposed to consider whether a medical opinion is consistent, or inconsistent, with other evidence in the record in deciding what weight to accord the opinion"). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Saul v. Astrue, No. 2:09–cv–1008, 2011 WL 1229781, at *2 (S.D.W.Va. March 28, 2011).

Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination;

---

[10] The social security regulations regarding the evaluation of medical opinion evidence have been amended for claims filed after March 27, 2017. See 20 C.F.R. §§ 404.1520c, 416.920c (setting out rules for claims filed on or after March 27, 2017, including that no specific evidentiary weight, including controlling weight will be given to any medical opinions). However, as this claim was filed prior to the effective date of the amended rule, I will apply the rules in 20 C.F.R. §§ 404.1527(c), 416.927.

8

(2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09cv622, 2010 WL 6621693, at *10 (E.D.Va. Dec. 29, 2010).

Here, the ALJ did not appropriately consider these factors, or the record, in determining that the opinion of Dr. Stewart merited little weight. As an initial matter, the ALJ never acknowledged that Dr. Stewart was a treating physician, nor did he even discuss her findings on Tresia's likely absences from work, or her ability to stand, walk, and sit during a workday. The ALJ did not point to any specifics in the record to support discounting Dr. Stewart's opinion, instead merely stating that her restrictions are "far more restrictive than warranted" and are an "outlier." R. 39. Even elsewhere in the opinion, the ALJ's discussion of the medical record is sparse. While the ALJ references various objective imaging in the record, he does not discuss Dr. Humphries's specific objective findings, including range of motion. R. 38–39. The ALJ writes that "[Tresia] has had full range of motion" and cites to a single medical record from October 2015. R. 38. While that statement may be narrowly true, the ALJ's job is not to cherry pick from the record medical evidence in support of his decision, while ignoring medical evidence that does not. See Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 267 (4th Cir. 2017) (noting that a "significant part of the ALJ's misapplication of the treating physician rule was his reliance on cherry-picked evidence skewed to contradict [the claimant's] doctors"). In fact, the medical record reflects other instances where Tresia did not have full range of motion, including Dr. Humphries's range of motion form from the consultative examination in December 2015. R. 381, 401. Likewise, Tresia consistently complained of back, stomach, and leg pain to Dr. Stewart,

9

and, on exam, Dr. Stewart recorded abnormalities on several occasions. R. 484–86, 525, 546–48, 604.

I recognize that it is not my function to conduct a blank slate review of the evidence by reweighing conflicting evidence, determining credibility, or substituting my judgment for the ALJ's when "reasonable minds could differ." See Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012); Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). In fact, I am precluded from doing so; it is the duty of the ALJ to explain the basis for his opinion. Here, the ALJ did not adequately weigh the conflicting evidence, specifically Dr. Stewart's opinion, and the ALJ did not explain his reasoning. At bottom, the ALJ did not adequately explain his decision to discount Dr. Stewart's opinions on Tresia's limitations, including because he did not adequately consider the factors outlined in 20 C.F.R. § 416.927(c)(2), or justify his decision with specific reasons. See Monroe, 826 F.3d at 189 (emphasizing that the ALJ must "'build an accurate and logical bridge from the evidence to his conclusion') (quotation omitted); Patterson v. Commissioner of Social Security, 846 F.3d 656 (4th Cir. 2017) (admonishing ALJ's to "show your work"). Accordingly, I conclude that substantial evidence does not support the ALJ's decision to discount the opinion of Dr. Stewart.

Because I find that remand is warranted based on the ALJ's failure to adequately explain his decision to discount Dr. Stewart's opinions, Tresia's additional allegations of error will not be decided. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments).

## **CONCLUSION**

For these reasons, Tresia's motion for summary judgment is **GRANTED in part** and the Commissioner's motion for summary judgment is **DENIED** and this case is **REMANDED** to the Commissioner for additional consideration under sentence four of 42 U.S.C. § 405(g).

Entered: January 24, 2020

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge